# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

CHRISTOPHER LAMONT LEWIS, )
)
    Plaintiff, )
)
v. ) Case No. 4:16-cv-00254-ACA-HNJ
)
CLARENCE THOMAS "TOMMY" )
JOHNSON, )
)
    Defendant.

## MEMORANDUM OPINION AND ORDER

In this case, *pro se* Plaintiff Christopher Lamont Lewis claims that Defendant Clarence Thomas Johnson violated his constitutional rights. Plaintiff asserts 28 U.S.C. § 1983 claims against Defendant for excessive force and denial of medical care.

The magistrate judge filed a report on May 25, 2018, recommending that the court deny Defendant's motion for summary judgment. (Doc. 28). Defendant filed objections to the report and recommendation on June 8, 2018. (Doc. 29). The case currently is before the court for a review of Defendant's objections to the report and recommendation.

### I. Excessive Force

In his report and recommendation, with respect to Plaintiff's excessive force claim, the magistrate judge found that a reasonable jury could conclude that

Defendant's actions were objectively unreasonable. (Doc. 28 at 10-11). Defendant objects to this finding and argues that the facts establish that he did not violate Plaintiff's right to be free from excessive force, and that even if he did, Defendant still enjoys qualified immunity because he did not violate a clearly established right. (Doc. 29).

"Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An official who asserts entitlement to qualified immunity must first establish that she or he was acting within the scope of his discretionary authority." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). "Once the official makes that showing, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate." *Id.*

Here, there is no dispute that Defendant was carrying out duties associated with his employment as a Correctional Officer at the Etowah County Sheriff's Office. Therefore, to overcome Defendant's qualified immunity defense, Plaintiff must "establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." *Alcocer*, 906 F.3d at 951. The court may consider in any order whether Plaintiff

2

has satisfied his burden. *Id.; see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Assuming without deciding that the magistrate judge properly concluded that questions of fact exist regarding whether Defendant violated Plaintiff's constitutional right to be free from excessive force, the court concludes that Defendant is entitled to qualified immunity because the right was not clearly established such that "it would [have been] clear to a reasonably officer that his conduct was unlawful in the situated he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Plaintiff's excessive force claim arises out of an incident the Etowah County Jail on January 26, 2016. Defendant brought Plaintiff's food tray to his cell, opened the cell door flap, and left the food tray on the flap. (Doc. 16-2 at ¶¶ 15-16). According to jail policy, correctional officers are not to leave any inmate cell door flaps open. (Doc. 16-2 at ¶ 17). Therefore, Defendant instructed Plaintiff to remove the tray from the door flap so that Defendant could shut and secure the flap. (Doc. 16-2 at ¶ 18). Plaintiff advised Defendant that he would not remove

the tray until Defendant radioed a Sergeant to bring Plaintiff his asthma inhaler that Plaintiff had requested from Defendant earlier in the day. (*Id.*; Doc. 27 at 4, ¶ 20).

When Plaintiff continued to refuse to remove the lunch tray from the flap, Defendant grabbed the tray, placed it on the floor outside the cell, and returned to secure the cell door flap. (Doc. 16-2 at ¶¶ 21-24). Defendant could not close the cell door flap because Plaintiff had extended his arms out on the flap and refused to move them until Defendant radioed the Sergeant regarding the inhaler. (Doc. 16-2 at ¶ 24).

Plaintiff continued to ignore Defendant's orders, so Defendant told Plaintiff that he was "going to attempt to force [the hatch] closed by kicking it." (Doc. 16-4 at 2). Plaintiff responded, "go ahead and try." (Doc. 16-2 at ¶ 27; Doc. 16-4 at 2). Defendant "took the toe of [his] left foot and tried to force the hatch closed from the underside position of the flap," but he could not close the flap due to the pressure of Plaintiff's arms. (Doc. 16-2 at ¶ 6). According to Plaintiff, Defendant "kicked and stomped" his hands and fingers and "viciously kicked the bottom of the . . . tray flap with the plaintiff's hands still attached, repeatedly attempting to force the hatch close[d], causing serious skin lacerations and swelling of the hands and wrists." (Doc. 11 at 3-4). Plaintiff claims that Defendant was "using all his might in attempt to either break [his] arms and wrists or make him hurt bad enough to remove his extremities" from the tray flap. (Doc. 27 at 4). When Defendant

could not get the flap to close, he told Plaintiff that he would leave the cell flap open temporarily because no other inmate was to be out of his cell at the time. (Doc. 16-2 at ¶ 28). The record does not indicate whether or how Defendant was able to ultimately close Plaintiff's cell flap door.

These facts, construed in the light most favorable to Plaintiff, do not demonstrate a violation of a clearly established constitutional right sufficient to overcome summary judgment. A right is clearly established when its contours are "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Singletary v. Vargas*, 804 F.3d 1174, 1184 (11th Cir. 2015) (internal quotation marks and citation omitted). "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right . . . ; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right . . . ; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009). For purposes of the first and second methods, "[i]n this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state

where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Plaintiff has not cited, and the court has not located, case law with indistinguishable facts clearly establishing a constitutional right, and the court finds that Defendant's actions are not so egregious that a constitutional right was clearly violated in the absence of analogous case law. Therefore, the court examines broad principles in case law that provide relevant guidance.

For decades, the Eleventh Circuit has recognized that "[p]rison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation." *Ort v. White*, 813 F.2d 318, 325 (11th Cir. 1987). "Prison officers must, however, have the authority to use that amount of force or those coercive measures reasonably necessary to enforce an inmate's compliance with valid prison rules and to protect themselves and the other inmates. *Id.* In the Eleventh Circuit, courts "give a wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). "When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive." *Danley v. Allen*, 540 F.3d 1298,

1309 (11th Cir. 2008). "Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Id.*

Based on these principles, the court finds that Plaintiff's right to be free from excessive force under the circumstances of this case was not clearly established. According to jail policy, officers at the Etowah County Jail are not to leave an inmate's cell door flaps open. (Doc. 16-2 at ¶ 17). Therefore, Defendant told Plaintiff to remove his lunch tray from the flap so that Defendant could close and securely lock the flap. (Doc. 16-2 at ¶ 18). Plaintiff repeatedly ignored Defendant's request to remove the tray. (Doc. 16-2 at ¶ 21). Defendant removed the tray and returned to lock Plaintiff's cell door flap. (Doc. 16-2 at ¶ 24). Plaintiff placed his hands in the door flap and continued to disobey Defendant's commands to remove them. (Doc. 16-2 at ¶¶ 24-25). When Defendant told Plaintiff that he would be "forced to try to remove" his hands so that he could securely lock the cell door flap, Plaintiff responded "go ahead and try." (Doc. 16-2 at ¶¶ 26-27; Doc. 16-4 at 2).

These facts show that Plaintiff ignored Defendant's commands to remove his hands from the cell door flap so that Defendant could secure the flap consistent with jail rules and procedures. In response, Defendant tried to force the flap closed with the tip of his boot. In the process, Defendant "repeatedly" kicked Plaintiff's hands and wrists. When Defendant could not get the flap to close, Defendant left

7

the cell flap open temporarily and left Plaintiff's unit. The record does not suggest that additional force was used, and Plaintiff has submitted no evidence that Defendant continued to kick his arms and hands after the initial attempt to close the flap was unsuccessful. Thus, under the general principles applicable to the prison security setting, the court finds that Plaintiff has not demonstrated that Defendant was on notice that his conduct violated a clearly established right to be free from excessive force. *See e.g., Bennett*, 898 F.2d at 1533; *Danley*, 540 F.3d at 1309.

Because Defendant did not violate a clearly established constitutional right, Defendant is entitled to qualified immunity on Plaintiff's excessive force claim.

## II. Deliberate Indifference

In his report and recommendation, the magistrate judge concluded that questions of fact exist regarding whether Plaintiff suffered a serious medical need and whether Defendant's response amounted to deliberated indifference. (Doc. 28 at 11-13). Defendant makes two objections to the magistrate judge's analysis. First, Defendant argues that Plaintiff "did not actually allege a claim for deliberate indifference to serious medical needs." (Doc. 29 at 14). In this regard, Defendant requests leave to address the issue in a supplemental special report. (Doc. 29 at 15). Second, Defendant disagrees with the magistrate judge's conclusion that there

is a genuine issue of material fact as to whether Defendant violated Plaintiff's right to medical care. (Doc. 29 at 14).

The court is not persuaded by Defendant's argument that Plaintiff did not allege a deliberate indifference claim. Plaintiff's amended complaint states that Plaintiff suffered "serious skin lacerations and swelling of the hands [and] wrists" and that he "now sees a bone specialist [because] of the wrist injuries." (Doc. 11 at 4). An inmate grievance form that Plaintiff attached to his amended complaint alleges that after Defendant injured Plaintiff's hands and wrists, Defendant denied his right to emergency medical care. (Doc. 11 at 11). Moreover, the order for special report specifically explained that Plaintiff's amended complaint attempts to state the following claims for relief:

> **The plaintiff alleges that Deputy Jailer Tommy Johnson used excessive force and denied him medical care on January 26, 2016. (Doc. 11). He states he was subjected to "violent physical assault" by Officer Johnson when Johnson grabbed his lunch tray from the "tray flap" and attempted to force the flap shut while his "hands, wrists, and forearms, were still outside the flap." *Id*. at 4 and 8. Johnson allegedly attempted to force the flap door shut by "repeatedly" kicking the door while the plaintiff's hands were "still attached," causing "serious lacerations and swelling of [the plaintiff's] hands and wrists" *Id*. at 4 and 8. The plaintiff alleges that Officer Johnson then denied his requests to obtain medical care for his injuries. *Id*. at 10-11. He now seeks compensatory damages and injunctive relief. *Id*. at 4.**

(Doc. 14 at 3) (emphasis in original).

Based on the allegations in Plaintiff's amended complaint and the order for

9

special report, the court finds that Plaintiff did assert a deliberate indifference claim, and Defendant was on notice that he should respond to the claim. Therefore, the court **DENIES** Defendant's request to address the claim in a supplemental special report.

Substantively, Defendant objects generally to the magistrate judge's conclusion that "there is a genuine issue of material fact as to whether Plaintiff's right to medical care was violated by Deputy Johnson." (Doc. 29 at 14-15). Defendant argues that "the evidence submitted shows that Plaintiff did in fact quickly receive medical care at the behest of Deputy Johnson." (Doc. 29 at 15). The court disagrees.

Taken in the light most favorable to Plaintiff, the facts demonstrate that after Defendant kicked Plaintiff's hands, Plaintiff was "cut, lacerated, beat up, [and] bruised." (Doc. 11 at 11). In Defendant's presence, Plaintiff declared a medical and psychological emergency because his hands and wrists were swollen, and he was "bleeding like a stuck pig." (Doc. 28 at 13; *see* Doc. 27 at 5). In response to Plaintiff's request for medical attention, Defendant told Plaintiff that "he does not do well with demands from inmates." (Doc. 11 at 11). Defendant also told Plaintiff, "Looks a little swollen. That's not enough blood for a medical emergency." (Doc. 27 at 5). Other officers took Plaintiff to the medical unit later in the day. (Doc. 16-5 at 2). The court finds no error with the magistrate judge's

conclusion that Plaintiff has submitted evidence creating a question of fact about whether he suffered a serious medical injury, whether Defendant had knowledge of Plaintiff's medical condition, and whether Defendant acted intentionally or recklessly to deny or delay access to medical care. (*See generally* Doc. 28 at 11-15).

Unlike Defendant's objection to the magistrate judge's excessive force analysis which challenges both whether the Defendant violated a right and whether the right was clearly established, Defendant objects only to the magistrate judge's findings concerning whether Defendant violated Plaintiff's right to medical care. Defendant does not object to the magistrate judge's findings (or lack thereof) regarding whether the right to medical care was clearly established. (*See* Doc. 14 at 14-15). In the report and recommendation, the magistrate judge warned the parties that "[o]bjections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection." (Doc. 28 at 15). The court will not make or review objections that the Defendant did not raise.

## III. Conclusion

Having carefully reviewed and considered *de novo* "those portions of the report or specified proposed findings or recommendations to which" Defendant objects, *see* 28 U.S.C. § 636(b)(1)(C), the court **ADOPTS IN PART** the

magistrate judge's report and **ACCEPTS IN PART** and **REJECTS IN PART** the magistrate judge's recommendation.

The court **REJECTS** the magistrate judge's recommendation that the court deny Defendant's motion for summary judgment on Plaintiff's excessive force claim. Because Defendant is entitled to qualified immunity on Plaintiff's excessive force claim, the court **GRANTS** Defendant's motion for summary judgment as to that claim.

The court **ACCEPTS** the magistrate judge's recommendation that the court deny Defendant's motion for summary judgment on Plaintiff's deliberate indifference claim. Accordingly, the court **DENIES** Defendant's motion for summary judgment as to the deliberate indifference claim.

The court will set Plaintiff's deliberate indifference claim for trial by separate order.

The court **SETS** this matter for a telephone conference at **10:00 a.m.** on **January 16, 2019**. **Plaintiff and counsel for Defendant shall dial 888-363-4734 and enter access code 9659451 to participate in the call.**

The court asks the Clerk to mail a copy of this order to Mr. Lewis at the following addresses: (1) Etowah County Detention Center, 827 Forrest Avenue, Gadsden, AL 35901 and (2) 206 Edison Road, Gadsden, Alabama 35904.

When Mr. Lewis last submitted a notice of change of address, he was incarcerated at the Etowah County Detention Center. Therefore, the court asks the Clerk to please mail a copy of this order to the chief jailer at the Etowah County Detention Center. **If Mr. Lewis remains in custody at the Etowah County Detention Center, the appropriate jail official(s) shall make Mr. Lewis available for the telephone call at 10:00 a.m. on January 16, 2019.**

**DONE** and **ORDERED** this January 3, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE