# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CHRISTOPHER LAMONT LEWIS,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) )  Case No. 4:16-cv-00254-ACA |
| **CLARENCE THOMAS "TOMMY" JOHNSON,** | ) ) ) ) |
| **Defendant.** | ) ) |

## MEMORANDUM OPINION

This matter is before the court on Defendant Clarence Thomas Johnson's motion for summary judgment as to Plaintiff Christopher Lamont Lewis's deliberate indifference claim. (Doc. 60).

Mr. Lewis was an inmate at the Etowah County Detention Center. Officer Johnson injured Mr. Lewis's hands when he kicked Mr. Lewis's food tray flap closed while Mr. Lewis's arms were resting on the flap. Mr. Lewis did not receive medical treatment for his injuries until three and a half hours later.

Proceeding *pro se*, Mr. Lewis filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Officer Johnson used excessive force and denied him medical care. (Doc. 1; Doc. 11).

Mr. Lewis's case proceeded through this court's special report process for prisoner *pro se* § 1983 cases alleging violations of constitutional rights. (*See* Doc. 14). The magistrate judge to whom this action was assigned construed Officer Johnson's special report as a motion for summary judgment (doc. 23), and Mr. Lewis responded to the motion (doc. 27).

The magistrate judge entered a report recommending that the court deny Officer Johnson's motion for summary judgment as to both of Mr. Lewis's claims. (Doc. 28). Officer Johnson objected to the magistrate judge's report and recommendation. (Doc. 29). The undersigned reviewed Officer Johnson's objections, and the court accepted in part and rejected in part the magistrate judge's report and recommendation. (Doc. 40). The court concluded that Officer Johnson was entitled to qualified immunity on Mr. Lewis's excessive force claim, and the court granted Officer Johnson's motion for summary judgment as to that claim. (Doc. 40 at 1–8). But the court found that questions of fact precluded summary judgment on the issue of whether Officer Johnson was deliberately indifferent to Mr. Lewis's serious medical need. (Doc. 40 at 8–11). The court did not address whether the constitutional right was clearly established because Officer Johnson did not object to the magistrate judge's report and recommendation on that ground. (*Id.* at 11).

Because the court's special report process limits traditional discovery available to litigants in regular civil cases, the court allowed the parties to engage in additional pretrial discovery and appointed counsel for Mr. Lewis. (*See* January 16, 2019 & April 12, 2019 minute entries; Docs. 41, 45, 46, 50, 52). Based on discussions with counsel during a November 13, 2019 telephone conference about what the additional discovery had revealed, the court permitted Officer Johnson to file another motion for summary judgment. (Doc. 54).

Officer Johnson argues that he is entitled to qualified immunity from Mr. Lewis's deliberate indifferent claim. The court agrees. Because the evidence fails to show that Officer Johnson violated a clearly established right, the court **GRANTS** Officer Johnson's motion for summary judgment. The court **WILL ENTER** judgment as a matter of law in favor of Officer Johnson and against Mr. Lewis on Mr. Lewis's deliberate indifference claim.

I.     **RELEVANT BACKGROUND**

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

Mr. Lewis's deliberate indifference claim arises out of an incident at the Etowah County Detention Center on January 26, 2016. Around 12:30 or 12:45 that

afternoon, Officer Johnson brought Mr. Lewis's food tray to his cell, opened the cell door flap, and left the food tray on the flap. (Doc. 16-2 at ¶¶ 15-16). Mr. Lewis refused to remove the food tray until Officer Johnson radioed a Sergeant to bring Mr. Lewis his asthma inhaler that Mr. Lewis had requested from Officer Johnson earlier in the day. (Doc. 16-2 at ¶ 18; Doc. 27 at 4, ¶ 20). Officer Johnson grabbed the tray, placed it on the floor outside the cell, and returned to secure the cell door flap. (Doc. 16-2 at ¶¶ 21-24). Officer Johnson could not close the cell door flap because Mr. Lewis had extended his arms out on the flap and refused to move them until Officer Johnson radioed the Sergeant regarding the inhaler. (Doc. 16-2 at ¶ 24).

    Mr. Lewis continued to ignore Officer Johnson's orders, so Officer Johnson told Mr. Lewis that he was "going to attempt to force [the hatch] closed by kicking it." (Doc. 16-4 at 2). According to Officer Johnson, Mr. Lewis responded, "go ahead and try." (Doc. 16-2 at ¶ 27; Doc. 16-4 at 2). Officer Johnson "took the toe of [his] left foot and tried to force the hatch closed from the underside position of the flap," but he could not close the flap due to the pressure of Mr. Lewis's arms. (Doc. 16-2 at ¶ 27). According to Mr. Lewis, Officer Johnson "kicked and stomped" his hands and fingers and "viciously kicked the bottom of the . . . tray flap with the plaintiff's hands still attached, repeatedly attempting to force the hatch close[d], causing serious skin lacerations and swelling of the hands and

wrists." (Doc. 11 at 3-4). According to Mr. Lewis's sworn allegations, he was "cut, lacerated, beat up, [and] bruised." (Doc. 11 at 11).

Officer Johnson left Mr. Lewis's cell unit, but he returned about 15 minutes later to do another security check. (Doc. 11 at 8, 10; Doc. 16-2 at ¶ 29). That is when Mr. Lewis declared a medical and psychological emergency because his hands and wrists were swollen, and he was "bleeding like a stuck pig." (Doc. 27 at 5; *see also* Doc. 11 at 10). Mr. Lewis requested medical attention, and Officer Johnson told Mr. Lewis that "he does not do well with demands from inmates." (Doc. 11 at 11). Officer Johnson also told Mr. Lewis, "Looks a little swollen. That's not enough blood for a medical emergency." (Doc. 27 at 5). Officer Johnson instructed Mr. Lewis to fill out a medical request slip. (Doc. 16-2 at ¶ 35).

Two other officers checked on Mr. Lewis around 3:15 p.m. (about two and a half hours after Mr. Lewis was injured) and took him to the medical unit. (Doc. 16-5 at 2; Doc. 16-5 at 2; Doc. 27 at 6).[1] A nurse examined Mr. Lewis a little after 4:00 p.m. (three and a half hours after the injury) and found a one centimeter cut on the side of his right hand with a small amount of dried bloody drainage.

---

[1] Those officers claim that Mr. Lewis injured himself by demonstrating for them how Officer Johnson had kicked the tray flap by "slamming it repeatedly against his own hands" causing both of Mr. Lewis's hands to bleed. (Doc. 16-5 at 2; Do. 16-6 at 2). Mr. Lewis denies that he injured himself. (Doc. 27 at 6). The court must construe this dispute in Mr. Lewis's favor and must accept Mr. Lewis's testimony that he did not injure himself.

(Doc. 63-1 at 72). The nurse also documented a "small horizontal abrasion" across Mr. Lewis's knuckles on his left hand with a "scant" amount of dried bloody drainage. (*Id.*). Mr. Lewis had "[s]trong, equal grip strength" and good range of motion. (*Id.*). The nurse found no edema, erythema, or bruising. (Doc. 63-1 at 72). She cleaned and bandaged Mr. Lewis's cuts, prescribed ibuprofen, ordered x-rays, and released Mr. Lewis to his cell. (*Id.*).

X-rays of Mr. Lewis's hands taken one week after the incident involving Officer Johnson were normal, and doctors made no additional treatment recommendations at that time. (Doc. 63-1 at 69–70).

Because Mr. Lewis kept complaining of pain, the jail medical staff referred him to an orthopedic specialist. (Doc. 63-2 at 8). Dr. Blackstock saw Mr. Lewis on May 4, 2016, about three months after the incident involving Officer Johnson. (*Id.*). Mr. Lewis complained of wrist pain. (*Id.*). Dr. Blackstock found that Mr. Lewis's right wrist had "some limited motion" which Dr. Blackstock "did not believe [was] a new issue." (Doc. 63-2 at 8). Mr. Lewis had pain with flexion of the left wrist but full range of motion, and no swelling or bony abnormalities. (*Id.*). X-rays revealed "a very small amount of degenerative changes." (*Id.*).

During a follow up visit with Dr. Blackstock on May 25, 2016, Mr. Lewis had full range of motion in both wrists, and Tinel and Phalen tests were negative. (Doc. 63-2 at 5). On June 25, 2016, Mr. Lewis saw Dr. Blackstock again and

complained that was he not improving. (Doc. 63-2 at 4). Mr. Lewis refused an injection. (*Id.*). Dr. Blackstock changed Mr. Lewis's anti-inflammatories, and he discussed stretching exercises with Mr. Lewis. (*Id.*).

By August 2016, Dr. Blackstock had released Mr. Lewis from his care, and by October 2016, Dr. Blackstock fired Mr. Lewis as a patient. (Doc. 63-1 at 58, 66–67).

## II. DISCUSSION

Mr. Lewis claims that Officer Johnson's three and a half hour delay in providing care for his injuries violated his constitutional rights.[2] Officer Johnson seeks summary judgment on Mr. Lewis's deliberate indifference claim on the basis that he is entitled to qualified immunity. "Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional rights of which a

---

[2] Neither party has cited evidence or advanced argument regarding whether Mr. Lewis was a pretrial detainee or a convicted prisoner at the time Officer Johnson injured his hands. Therefore, it is unclear whether Mr. Lewis asserts a Fourteenth Amendment claim or an Eighth Amendment claim. Nevertheless, Mr. Lewis's status is immaterial to the court's analysis because "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997), *overruled in part on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009).

reasonable person would have known.'" *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An official who asserts entitlement to qualified immunity must first establish that she or he was acting within the scope of his discretionary authority." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). "Once the official makes that showing, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate." *Id.*

The court previously found, and the parties do not dispute, that Officer Johnson was carrying out duties associated with his employment as a Correctional Officer at the Etowah County Sheriff's Office. (Doc. 40 at 2; *see generally* Docs. 61, 68, 71). Therefore, to overcome Officer Johnson's qualified immunity defense, Mr. Lewis must "establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." *Alcocer*, 906 F.3d at 951. The court may consider in any order whether Mr. Lewis has satisfied his burden. *Id.; see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Mr. Lewis's claim does not survive summary judgment because the facts, construed in the light most favorable to Mr. Lewis, do not demonstrate that the right to medical care any sooner than Mr. Lewis received it was clearly established.

Mr. Lewis asserts that "it is clearly established that prison officials cannot be deliberately indifferent to an inmate's serious medical condition." (Doc. 68 at 16). This generalized proposition is not the relevant inquiry. Rather, in the context of qualified immunity, the court considers "what an objectively reasonable official must have known at the pertinent time and place; that is, we are examining whether it would be clear to a reasonable officer that his conduct was unlawful in the situation [the defendant officer] confronted." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (quotations and emphasis omitted).

A plaintiff may demonstrate that a right is clearly established in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right . . . ; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right . . . ; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Mr. Lewis does not articulate which approach he claims proves that the law was clearly established. (*See* Doc. 68 at 15–16). Mr. Lewis has not cited, and the court has not located, case law with indistinguishable facts

clearly establishing a constitutional right. In addition, Mr. Lewis has not argued that Officer Johnson's actions are so egregious that a constitutional right was clearly violated in the absence of analogous case law. Therefore, the court examines broad principles in case law that provide relevant guidance. Under this approach, "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (quotations omitted).

To establish that a prison official acted with deliberate indifference, a plaintiff must show: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Gilmore v. Hodges*, 738 F.3d 266, 273–74 (11th Cir. 2013). The inquiry is both objective and subjective. *Id.* at 274. First, a plaintiff must show "an objectively serious medical need." *Id.* "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* at 1243. Second, a plaintiff must show "that the official acted with deliberate indifference, *i.e.,* the official subjectively knew of

and disregarded the risk of serious harm, and acted with more than mere negligence. *Gilmore*, 738 F.3d at 274.

In addition, to prevail on a constitutional claim for "immediate or emergency medical attention," as Mr. Lewis has alleged here, the evidence must show "medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute" a constitutional violation. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

In the Eleventh Circuit, "[a]t a high level of generality, certain aspects of the law have been established." *Youmans*, 626 F.3d at 564. For example, both long and short delays can constitute a constitutional violation, depending on the nature of the injuries and the reason for the delay. *See Bozeman v. Orum,* 422 F.3d 1265, 1273–74 (11th Cir. 2005) (a fourteen-minute delay, when plaintiff was unconscious and not breathing, is deliberate indifference), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Harris v. Coweta Cty.,* 21 F.3d 388, 393–94 (11th Cir. 1994) (a several week delay in treating a painful hand condition created a genuine issue of material fact about deliberate

11

indifference). And delays of only a few hours for treatment for bleeding cuts can establish deliberate indifference in certain situations. *See Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir.1985) (a two-and-one-half-hour delay in treating a bleeding cut when the evidence showed "that the cut was at least one and a half inches long, that it required six stitches, that there was blood on the floor and on [plaintiff's] coat and shirt," and that officers waited "for a detective to tell them what to do" was deliberate indifference).

However, other delays under different circumstances may be excusable. *See Andujar v. Rodriguez*, 486 F.3d 1199, 1204 (11th Cir. 2007) (a two hour delay in providing stitches to a puncture wound after applying a temporary bandage to allow officers time to book the plaintiff did not amount to deliberate indifference); *Hill*, 40 F.3d at 1190–92 (four hour delay for stomach pain, vomiting blood, and a dried blood "smear" in underwear while officers fed other inmates was not a constitutional violation).

Applying these principles to the present case, the court finds that it was not clearly established that in January 2016, a three and a half hour delay in treatment for the injuries that Mr. Lewis suffered violated his constitutional rights. Based on *Aldridge*, Officer Johnson would have been on notice that a two and a half hour delay for cuts that bled continuously, that left a pool of blood on the floor, and that required six stiches was a violation of constitutional rights. But this case is not

*Aldridge*. There is no evidence that Mr. Lewis's cuts bled continuously, and in fact, his medical records indicating small amounts of dried blood around his wounds suggest the opposite. And Mr. Lewis required no stitches.

In the light most favorable to Mr. Lewis, the evidence shows that after Officer Johnson kicked the food trap on his arms, he declared a medical and psychological emergency and requested treatment for cuts, bruises, and swelling, which according to Mr. Lewis left him "bleeding like a stuck pig." (Doc. 27 at 5; see also Doc. 11 at 10). However, the evidence is undisputed that Mr. Lewis suffered a one centimeter cut on one hand and abrasions to his knuckles on the other. (Doc. 63-1 at 72). There is no evidence in the record about how long Mr. Lewis's hands bled after the initial injury or how much blood was present. But when he saw the nurse just hours later, both hands showed only "small" or "scant" amounts of dried blood. (Doc. 63-1 at 72). In addition, Mr. Lewis's hands were not swollen or bruised, and he had good range of motion. The nurse cleaned and bandaged his hands and prescribed over the counter pain reliever. (*Id.*).

Under the circumstances of this case, the court cannot find that pre-existing law put Officer Johnson on notice that a failure to immediately remove Mr. Lewis from his cell for medical treatment for a one centimeter cut and small lacerations that were accompanied by "small" or "scant" amounts of dried blood and that required only bandaging and pain reliever violated a constitutional right. *See*

*Youmans*, 626 F.3d at 566 (granting qualified immunity because it was not clearly established in 2010 that a four hour delay in providing care for "several cuts and abrasions" to an inmate's "head, face, shoulder, elbow, and hand" accompanied by "some visible blood" and diagnoses of multiple contusions violated the inmate's constitutional rights).

### III.   CONCLUSION

The court **GRANTS** Officer Johnson's motion for summary judgment. (Doc. 60).  The court **WILL ENTER** judgment as a matter of law in favor of Officer Johnson and against Mr. Lewis on Mr. Lewis's deliberate indifference claim.

The court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 18, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE